## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

RICHARD E. BURGESS,

             Plaintiff,

  v.

TOWN OF WALLINGFORD; CHIEF
DOUGLAS L. DORTENZIO, In His
Individual and Official Capacities;
LIEUTENANT ANTHONY MARTINO, In
His Individual and Official Capacities;
SERGEANT MICHAEL COLAVOLPE, In
His Individual and Official Capacities;
OFFICER GABRIEL GARCIA, In His
Individual Capacity; OFFICER DEVIN
FLOOD, In His Individual Capacity; and
MARK VANAMAN,

             Defendants.

3: 11 -CV- 1129   (CSH)

## RULING ON DEFENDANTS' MOTION TO COMPEL AND FOR SANCTIONS AND MOTION FOR PROTECTIVE ORDER

**HAIGHT, Senior District Judge:**

In this action for false and malicious arrest, plaintiff Richard Burgess ("Plaintiff") has repeatedly attempted to make audio recordings of depositions and has published deposition transcripts, as transcribed by a court reporter, on the Internet.  Defendants now move the Court for two orders: (1) an order compelling Plaintiff to remove the transcript of his deposition testimony from the Internet and  imposing sanctions for said publication online; and (2) a protective order barring Plaintiff from making future audio recordings at depositions, prohibiting him from publishing deposition transcripts on the Internet, and mandating his removal of all deposition

1

transcripts he has placed online. Doc. #31, 32.

## I.   FACTUAL SUMMARY

Plaintiff Richard Burgess commenced this action alleging "false and malicious arrest" by the Wallingford Police Department on May 16, 2010.  Doc. #1.  Burgess has alleged that, on that date, he accompanied his girlfriend to Yale Billiards, located at 950 Yale Avenue in the town of Wallingford, Connecticut. *Id.*, ¶11.  According to his Complaint, Plaintiff "was wearing a handgun visibly secured in a holster at his waist," for which he "possessed a valid Connecticut pistol permit" and "legal regist[ration] to him through the Connecticut State Police." *Id.*, ¶12.  Burgess asserts that while he was playing billiards, the owner of the business, Robert Hilton, approached him and requested that he conceal his handgun. *Id.*, ¶13.  Burgess refused and Hilton then allegedly retreated to phone the police to "check if openly carrying a firearm is legal." *Id.*  Shortly thereafter, a patron named Mark Vanaman allegedly approached Burgess and "told [him] to conceal his handgun or [Vanaman] would call the police." *Id.*, ¶14.  Burgess claims he responded by telling Vanaman "to leave him alone and to feel free to call the police." *Id.*

Burgess also asserts that Hilton and Vanaman then "reapproached [him together] and they agreed that Burgess would leave." *Id.*  At that point, Burgess allegedly proceeded outside to wait for the police to arrive "and clear up the issue of open carrying [of handguns] being legal." *Id.*, ¶15.

When Hilton phoned the Wallingford Police Department and explained the situation, the dispatcher sent Sergeant Michael Colavolpe and  Officers Michael Franenza,  Abel Gonzalez, Gabriel Garcia, and Devin Flood to Yale Billiards. *Id.*, ¶23.  The police officers seized Burgess's gun and arrested him for "breach of the peace." *Id.*, ¶27.  Plaintiff was ultimately transported to the Wallingford Police Department and charged with disorderly conduct in violation of Connecticut

General Statutes § 53a-182.[1]  According to Plaintiff, "[o]n May 25, 2010 the charge of Disorderly Conduct was dismissed based on the recommendation of the Prosecutor advising the Judge a reason of 'No Probable Cause.'"  *Id*. ¶46.

On July 18, 2011,  Plaintiff brought the present action against the Town of Wallingford; Chief of Police Douglas L. Dortenzio; Officers Colavolpe, Garcia, and Flood; Investigating Officer Lieutenant Anthony Martino;  and Yale Billiards patron Mark Vanaman.[2]   In his Complaint, Plaintiff set forth claims for:  unlawful arrest, including, *inter alia*, unreasonable search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Section 1983"); false arrest and failure by the town of Wallingford to adequately train its police officers; deprivation of free speech, in violation of the First and Fourteenth Amendments and Section 1983; deprivation of the right to

---

[1]  Pursuant to  Section  53a-182 of the Connecticut General Statutes, "disorderly conduct" is defined as a "Class demeanor," as follows:

> (a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse; or (7) commits simple trespass, as provided in section 53a-110a, and observes, in other than a casual or cursory manner, another person (A) without the knowledge or consent of such other person, (B) while such other person is inside a dwelling, as defined in section 53a-100, and not in plain view, and (C) under circumstances where such other person has a reasonable expectation of privacy.

Conn. Gen. Stat. §53a-182(a).

[2]  All named defendants  in  this  action are represented by Attorneys Kristan M. Maccini and Thomas R. Gerarde of Howd & Ludorf, with the exception of Mark Vanaman, who is a *pro se* defendant.  Thus, when the Court refers to positions taken by Defendants' counsel herein, such assertions are attributed to all defendants excluding Vanaman.

keep and bear arms in violation of the Second and Fourteenth Amendments and the Connecticut Constitution, Art. I, §15; and malicious prosecution by defendant Vanaman.

At the present stage of the proceedings, the parties are engaged in discovery. This process has, however, been plagued throughout by heated disputes over Plaintiff's attempts to make audio recordings of deposition testimony and his publication thereafter of deposition transcripts on the Internet. For example, on March 16, 2012, during the taking of Plaintiff's own deposition, the parties found it necessary to contact the Court to resolve an impasse they had reached. *See* Doc. #28. In particular, Defendants' notice of the deposition had indicated that Plaintiff's testimony would be recorded by a qualified court stenographer, pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure. *Id.* Plaintiff appeared for his deposition with a tape recorder to make an audio recording of his own testimony and, in fact, began taping. *Id.* Defendants' counsel objected to Plaintiff's use of the tape recorder on the grounds that (1) Plaintiff had given no prior notice of his intention to make an audio recording of his testimony, Fed. R. Civ. P. 30(b)(3)(B), and (2) Plaintiff was likely to make inappropriate use of the recording thereafter. *Id*. After hearing counsel argue the question during a telephone conference, the Court sustained Defendants' objection, "directed that no taped recording be made of the deposition, and that the initial portion that had been recorded not be published or promulgated by the [P]laintiff in any fashion." *Id.* Plaintiff then ceased recording his deposition. Doc. #34-1, p. 3. When later furnished by the court reporter with a copy of his certified transcript, Plaintiff admittedly published it "on the Internet." *Id*.

Following the Court's aforementioned ruling, Plaintiff has continued to appear at depositions with his digital audio recorder, seeking to make tapes of the testimony given. *See* Doc. #34-1, p. 3. At the depositions of witnesses Robert Hilton and Sara Dobensky, the owner and an employee

4

of Yale Billiards, respectively, Defendants' counsel made oral objections to Plaintiff making audio recordings but did not communicate with the Court or file any written objections.  Doc. #34-1, p. 3. Although the parties' submissions do not address whether Plaintiff actually recorded Hilton's and Dobensky's deposition testimony, it is unlikely that he did so in light of Defendants' fervent opposition.  In any event, Plaintiff later "published online the certified transcripts furnished by the court reporter."[3]  *Id.*

Thereafter, the issue of Plaintiff's desire to make audio recordings at depositions resurfaced at the scheduled deposition of *pro se* defendant Mark Vanaman.  Plaintiff noticed Vanaman's deposition to take place at the offices of his counsel, Rachel Baird, on July 27, 2012.  Doc. #34-3. In the Notice, Plaintiff included his intention "to record the proceedings of the deposition by digital audio recorder in addition to the means stated above [ *i.e.*, stenography by court reporting services]." *Id.*, p. 1.  On the day of that deposition, however, Attorney Kristan Maccini, counsel of record for all Defendants other than *pro se* Vanaman, asserted that Vanaman had not received a written copy of the Notice of Deposition until he arrived at the deposition.[4]  Attorney Maccini objected to

---

[3]  The Court takes judicial notice that, as Defendants have asserted (Doc. #31, p.1), Plaintiff has placed the deposition transcripts of his own deposition and those of witnesses Robert Hilton and Sara Dobensky on a public website entitled "Connecticut Carry: Every citizen has a right to bear arms in defense of himself and the state," which may be found at www.ctcarry.com. On the site, "*Connecticut Carry*" declares that it "is dedicated to advancing and protecting the fundamental civil rights of the men and women of Connecticut to keep and bear arms for defense of themselves and the state as guaranteed by the United States Constitution and the Constitution of Connecticut." Plaintiff is listed as the President of Connecticut Carry, Inc.

[4]  Joseph E. Gasser, the paid summer intern of plaintiff's counsel, Attorney Rachel Baird, testified by affidavit that he assisted in drafting and mailed the deposition notice to *pro se* defendant Mark Vanaman at his address of record, 313 Grove Street in Meriden, Connecticut. Doc. #34-2, ¶17. On July 26, 2012, the day before Vanaman was scheduled to appear, Gasser phoned Vanaman to confirm his availability to be deposed on the following day.  Vanaman, however, stated that he had

Plaintiff's recording of Vanaman's deposition by any means in addition to the court reporter's transcript. *Id.*, p.¶ 26. Shortly thereafter, Attorney Maccini and Vanaman left Attorney Baird's office without any testimony being taken of Vanaman. Doc. #34-2, ¶32.

## II.    **PENDING MOTION**

Defendants simultaneously move the Court for: (1) an order compelling Plaintiff, pursuant to Federal Rule 37 and Local Rule 37 of Civil Procedure, to "remove the publication of his written deposition transcript from the website http://ctcarry.com" and for sanctions for Plaintiff's "blatant disregard of this Court's Order," Doc. #31; and (2) a protective order, pursuant to Federal Rule of Civil Procedure 26(c), "prohibiting the [P]laintiff from publishing deposition transcripts and/or other documents relative to his matter containing personally identifying information of witnesses and defendants," ordering Plaintiff "to remove any such documents he previously published on the [I]nternet," and barring Plaintiff and/or his counsel, pursuant to Federal Rules 28 and 30 of Civil Procedure, from "unilaterally and unofficially audio recording or video recording depositions." Doc. #32. Defendants contend that Plaintiff's publication of deposition transcripts "is a calculated effort [by Plaintiff] to harass, vex and annoy these defendants and non-party witnesses and is an abuse of process." Doc. #32, p. 2.

Plaintiff simultaneously objects to both of Defendants' motions. First, he argues that he

---

not received the notice and suggested possible misrouting of the notice by the United States Postal Service "because there are 'two Grove Streets' in Meriden." *Id.*, ¶¶20-22. Vanaman nonetheless confirmed his availability to be deposed on the next day. *Id.*, ¶¶ 23-24. On July 27, 2012, *pro se* Vanaman and Attorney Maccini appeared at Attorney Baird's office for the scheduled deposition. *Id.*, ¶25. Attorney Maccini objected to Vanaman's deposition being recorded by any means in addition to the court reporter's transcript. *Id.*,¶ 26. Gasser avers that, although Attorney Baird stated to Attorney Maccini, "I'm going to instruct Mr. Gasser to record the proceedings," he made no such recordings. *Id.*, ¶¶28-31.

should not be barred from making audio recordings of deposition testimony provided that he gives proper notice under Fed. R. Civ. P. 30(b)(3)(B). In addition, he stresses that "any modern digital recording device that would be used [by him] would not distort the record" – *i.e.*, not run afoul of Fed. R. Civ. P. 30((b)(5)(B), which mandates that "[i]f the deposition is recorded nonstenographically, . . . [t]he deponent's and attorneys' appearance or demeanor must not be distorted through recording techniques." Doc. #34-1, p. 6. He asserts that if he makes audio recordings of the depositions, it will ensure the accuracy of the court reporter's transcripts – in his words, "avoid distortions, not create them." *Id.*

Second, Plaintiff objects to any order to compel his removal of previously taken deposition transcripts from the Internet, arguing that "deposition transcripts are not privileged materials." Doc. #34-1, p. 8. Plaintiff asserts that "[n]ever has the court forbidden any party from publishing the written transcript of any person's deposition online or disseminating the same by any other means." *Id.*, p. 5.

## III.   DISCUSSION

### A.   Motion to Compel Removal of Plaintiff's Deposition Transcript from the Internet and Sanctions for Noncompliance with Court Order of 3/16/2012

In their pending "motion to compel," Defendants move the Court for an order to compel Plaintiff to "remove the publication of his written deposition transcript from the website http://ctcarry.com" and for sanctions for Plaintiff's "blatant disregard of this Court's Order." Doc. #31. Defendants base this motion on Rule 37 of both the Federal and Local Rules of Civil Procedure, arguing that "discovery orders are meant to be followed," and "a party who flouts such orders does so at his peril." Doc. #31-1, p. 2 (quoting respectively *Bambu Sales, Inc. v. Ozak*

7

*Trading, Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) and *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)).  In particular, Defendants seek sanctions on the grounds that Plaintiff "has blatantly violated this Court's Order of March 16, 2012 by publishing his written deposition transcript on his website http://ctcarry.com." Doc. #31-1, p. 3.

Rule 37(b)(2)  "provides that if [a party or] an officer of a  party refuses to obey an order compelling discovery, the court may impose sanctions against that individual, including, where appropriate, dismissal of the action." *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 734 (2d Cir. 1987), *cert denied*, 488 U.S. 825 (1988).[5]  Rule 37, "which focuses on the

---

[5]  Specifically, Federal Rule of Civil Procedure 37(b)(2) provides, in pertinent part:

If a party or a party's officer, director, or managing . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  Moreover, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable

discovery obligations of civil litigants, [thus] grants a district court 'broad power' to impose sanctions, including dismissal, on parties who engage in abusive litigation practices." *Mahon v. Texaco Inc.*, 122 F. App'x 537, 538 (2d Cir. 2005) (citing *Friends of Animals, Inc. v. United States Surgical Corp.*, 131 F.3d 332, 334 (2d Cir.1997) (*per curiam*)).[6]

Apart from Rule 37(b)(2), it is within the inherent power of the Court to impose sanctions, when necessary, to control litigation.[7] *See, e.g.*, *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991), *reh'g denied*, 501 U.S. 1269 (1991)).  As the Supreme Court explained in *Chambers v. NASCO, Inc.*, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." 501 U.S.

_____

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*. 37(b)(2)C).

[6]  Similarly, "Federal Rule of Civil Procedure 16(f) governs the imposition of sanctions for a litigant's failure to participate in pretrial conferences or comply with pretrial orders." *Houghton v. Culver*, 467 F. App'x. 63, 64 (2d Cir. 2012).  Under Federal Rule of Civil Procedure 16(f)(1)(C),  "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a scheduling or other pretrial order." *See also* Fed. R. Civ .P. 16 Advisory Committee Notes, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery.").

[7]  In this instance, the Court may more appropriately consider imposing sanctions in the exercise of its inherent power to control litigation.  Rule 37 is designed to address parties' failure to afford discovery or refusal to do so.  Under Rule 37, "a party may move for an order compelling disclosure or discovery" and seek sanctions for the opposing party's unjustifiable failure to comply with said order.  Fed. R. Civ. P. 37 (b)(2).  Here, Defendants do not seek to compel disclosure of discovery but rather request the Court to sanction Plaintiff for failing to comply with the Court's previous order barring him from publicly disseminating his deposition testimony. The United States Supreme Court has held that "if in the informed discretion of the court" there is "bad-faith conduct" and neither statute "nor the Rules are up to the task, the court may safely rely on its inherent power" to sanction such conduct.  *Chambers,* 501 U.S. at 50.

at 43 (internal quotations and citation omitted).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotations and citation omitted).  It thus follows that the " power to punish for contempts is inherent in all courts."   *Id.* at 44 (internal quotations and citation omitted).[8]

Whether considered under Rule 37 of the Federal Rules of Civil Procedure for  failure to comply with a discovery order or under the Court's inherent power to control litigation, sanctions are a drastic penalty reserved in general for culpable conduct, such as willful and conscious disregard of a court order. *See, e.g.*, *Houghton v. Culver*, 467 F. App'x  63, 65 (2d Cir. 2012) (affirming district court's dismissal of action under Rule 37(b)(2) for plaintiff's failure to comply with three pretrial orders and failure to prepare for trial); *John B. Hull, Inc. v. Waterbury Petroleum Products*, *Inc.*, 845 F.2d 1172,  1176 (2d Cir. 1988) (sanctions such as "[d]ismissal under Rule 37 [are] warranted . . . where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault") (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986)) .  *See also Cuttino v. Genesis Health Ventures, Inc.*, No. 3:04CV575 (MRK), 2006 WL 62833, at *8 (D. Conn. Jan. 11, 2006) ("Imposition of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure.") (quotation marks and citations omitted); *accord Vertrue Inc. v. Meshkin*, No. 3:05cv1809 (PCD), 2006 WL 2632333, at *4 (D.Conn. Sept. 12, 2006).  *See*

---

[8] *See also*  33 Am. Jur. Proof of Facts 3d 459, at §6 ("court's inherent power to sanction") (Westlaw database update August 2012) ("In addition to the authority expressly stated in the Federal Rules of Civil Procedure, federal courts enjoy certain inherent powers necessary to the exercise of all others.   Among these is the power to deal with troublesome litigation behavior.").

*generally* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291, at 714 (2d ed. 1994) (sanctions are appropriate "for especially serious disregard of the obligations imposed by the discovery rules").

In the case at bar, on March 16, 2012, the Court "directed that no taped recording be made of the [Plaintiff's] deposition, and that the initial portion that had been recorded not be published or promulgated by the [P]laintiff in any fashion."[9]  Doc. # 28.  Rather than addressing publication of the final stenographically-created deposition transcript, the Court order explicitly banned publication or dissemination of the unauthorized partial audio recording Plaintiff created that day – a recording he had commenced without prior notice to all parties, *i.e.*, in violation of  Fed. R. Civ. P. 30(b)(3)(B).  When Plaintiff thereafter published the *written transcript* of his testimony on the Internet, he did not violate the Court's order barring dissemination of the audio recording.[10]   The Court will therefore decline to impose sanctions against Plaintiff for non-compliance with its prior order (Doc. #28) at this time.  *See, e.g., Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*,  951 F.2d 1357, 1364 (2d Cir. 1991) ("there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)").

---

[9] Defendants had argued that "no prior notice had been given by [P]laintiff of that additional method of recording his testimony" and "inappropriate use might thereafter be made of the recording."  Doc. #28.  Plaintiff himself  has "acknowledge[d] that notice was not provided before the commencement of the deposition [that it] would be recorded by additional means."  Doc. #34-1, p. 3.

[10] Absent prior notice, audio recording that day was an  unauthorized "additional method" of recording the deposition testimony under Fed. R. Civ. P. 30(b)(3)(B).  Moreover, Courts have often distinguished between the inherent problems arising from the publication of audio and video recordings, which are susceptible to splicing and thus erroneous portrayal of testimony, and stenographic transcripts, which are more difficult to present in a misleading fashion.  *See, e.g.*, *See, e.g.*, *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).

It thus follows that, absent a showing that publication of Plaintiff's deposition transcript violated a court order, the Court will not, at this time order removal of Plaintiff's deposition transcript from the Internet.  Consequently, the Court shall deny Defendants' motion to compel removal of said transcript and to impose sanctions (Doc. #31).

**B.** **Motion for Protective Order – Audio Recordings and Dissemination of Deposition Testimony**

    **1.** **Standards of Law**

        **a.** **Protective Orders in General**

Pursuant to Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed. R. Civ. P. 26(c)(1).   The court may then, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*.   In such an order, the court may, *inter alia*, forbid or specify limited terms for the disclosure or discovery and/or prescribe a discovery method other than the method selected by the party seeking discovery.  *Id.* 26(c)(1)(A)-(C).   "The text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed."  *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 73 (D.Conn. 2010) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.")).

A court has broad discretion regarding whether to issue a protective order under Rule 26(c). *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992) ("[t]he grant and nature of protection is

singularly within the discretion of the district court")(internal quotations and citation omitted).  *See also  S.E.C. v. Rajaratnam,* 622 F.3d 159, 181  (2d. Cir. 2010) (district court may qualify right of access to discovery materials "in the interest of protecting legitimate interests"); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76,  103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery ... [and] abuses its discretion only when the discovery is so limited as to affect a party's substantial rights.")(internal quotations and citations omitted), *cert. denied*, 555 U.S. 1218 (2009); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir.1992)("[a] trial court enjoys wide discretion in its handling of pre-trial discovery"); *LaPlante v. Estano*, 228 F.R.D. 115, 116  (D.Conn. 2005) (" A court is given broad discretion regarding whether to issue a protective order.").

However, a court may issue a protective order only after the moving party demonstrates that "good cause" exists for the protection of the material.  *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2d Cir. 2004).  To establish "good cause" under Rule 26(c), courts require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Havens v. Metro. Life Ins. Co. (In re Akron Beacon Journal)*, No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *10 (S.D.N.Y. April 20, 1995)(quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Havens*, 1995 WL 234710, at *10.

"If the moving party establishes good cause for protection, 'the court may balance the countervailing interests to determine whether to exercise discretion and grant the order.'" *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D.Conn. 2006) (quoting *Rofail v. United States*, 227 F.R.D. 53, 55 (E.D.N.Y.2005)) .

13

### b.      Method for Recording Deposition Testimony

With respect to the method of taking oral testimony at a deposition, Federal Rule 30((b)(3)(A) of Civil Procedure specifies that "[t]he party who notices the deposition must state in the notice the method for recording the testimony" and "[u]nless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means."  Prior to a noticed deposition, any party may specify an "additional method" of recording, as follows:

> With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice. That party bears the expense of the additional record or transcript unless the court orders otherwise.

Fed. R. Civ. P. 30((b)(3)(B).  Thus, in general, "unless a court orders otherwise, a party may [audio]tape a deposition as a matter of right, as long as notice is given of the party's intention to do so."  *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007).

### 2.      Audio Recordings at Depositions

As both parties concede, the Court has previously addressed the issue of audio recordings of deposition testimony in this case, ruling that, *absent prior  notice* to the deponent and all parties, such recording would not be allowed in addition to the designated stenography of a court reporting service.  Doc. #28 (3/16/2012).  Moreover, in light of Defendants' concerns regarding potential inappropriate use of Plaintiff's audio recording of his deposition testimony,  publication or promulgation of that recording was barred by the Court.  *Id.*

According to Defendants, Plaintiff has since requested to make audio recordings of deposition testimony at each deposition and  Defendants have orally objected.   *See*  Doc. #34-1, p. 3.  Neither Defendants nor Plaintiff have verified for the Court whether Plaintiff gave prior notice

with respect to making such recordings and/or whether such recordings were in fact made. [11]

However, with respect to the deposition currently at issue, that of *pro se* defendant Mark Vanaman, Plaintiff points out that prior to that deposition, he provided the requisite notice of his intention to make an audio recording by including in the Notice of Deposition that he "reserve[d] the right to record the proceedings of the deposition by digital audio recorder in addition to the means stated above [ *i.e.*, stenography by court reporting services]." Doc. #34-3, p. 1. Counsel for the remaining Defendants, however, have asserted that Vanaman did not receive a written copy of the Notice of Deposition until Vanaman arrived at the deposition, perhaps, Vanaman alleges, due to misrouting by the United States Postal Service. Doc. #34-2, ¶¶17, 20-22. Once again, Defendants contend that no sufficient notice was given to the deponent that Plaintiff intended to make an audio recording of prospective deposition testimony.

In addition to concerns regarding prior notice, a recurrent issue herein has been Plaintiff's publication of deposition transcripts on his Internet website for the purpose of advancing and protecting a citizen's right to bear arms.[12] Defendants wish to prevent similar publication of audio recordings, which may, through editing or inaccuracy of such recordings, result in inaccurate portrayal of deponents' testimony. Moreover, skirmishes regarding potential audio recordings have disrupted and delayed discovery, leading to undue expense and burden to the parties.

---

[11] At the depositions of witnesses Robert Hilton and Sara Dobensky, Defendants' counsel made oral objections to Plaintiff making an audio recording but did not communicate with the Court or file any written objections. Doc. #34-1, p. 3.

[12] After attempting to make audio recordings at the depositions of witnesses Robert Hilton and Sara Dobensky, Plaintiff published the stenographic deposition transcripts online. Doc. #34-1, p. 3. Plaintiff's publication of such transcripts on the Internet suggests that he may similarly wish to disseminate audio recordings. Doc. #32-1, p. 5.

It is of course the fact that under Federal Rule of Civil Procedure 30(b)(3)(B), "[w]ith prior notice to the deponent and other parties, any party may designate another method for recording the testimony [at a deposition] in addition to that specified in the original notice."   Nowhere in the Federal Rules, however, is misuse of said deposition recordings deemed permissible.   Most importantly, a Court, in its discretion, may "for good cause" limit discovery or the disclosure thereof for purposes of protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. 26 (c).

Plaintiff counters that at least one purpose in his request to make audio recordings is to ensure the accuracy of the court reporter's transcripts – that is, "to avoid distortions, not create them."  Doc. #34-1, p. 6.  Such an argument fails to persuade the Court, however, because accuracy of a deposition transcript is effected without supplementary audio recording.  Under Federal Rule 30(e)(1) of Civil Procedure, each deponent is afforded  an opportunity to review and correct any errors in the transcript prior to its production in final form by the court reporter.[13]

Nonetheless, because a party may employ an additional method of recording deposition testimony provided he follows the directives of Federal Rule 30(b),  the Court shall allow Plaintiff to make audio recordings of deposition testimony if he gives *prior notice* to the deponent and other

---

[13]  Fed. R. Civ. P. 30 (e)(1) states:

On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

parties in the action of his intention to so record.  Fed. R. Civ. P. 30(b)(3)(B).  To exercise this right, he must ensure that his notices are properly served prior to the depositions.[14]  Moreover, he must make his recordings without interrupting or interfering with the taking of testimony.  Any disruptive behavior while recording will result in the Court banning future recordings.

Furthermore, with respect to past disputes and discovery delays regarding Plaintiff's intended use of audio recordings, the Court takes into account the inherent susceptibility of audio tapes to editing. As numerous courts have observed, in this age of advanced technology, publication of audio recordings is rife with potential for abuse.  *See, e.g.*, *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (noting that videotapes, for example, "can more easily be abused [than transcripts] because they can be cut and spliced and used as sound bites") (internal quotations and citation omitted).  In particular, splicing of audio recordings may result in false or misleading statements when taken out of context.

Given the lack of trust regarding potential misuse of tapes, the heated debates, and the pervasive hostility existing  between the parties at depositions in this action, the Court finds "good cause" under Rule 26(c) to impose a ban on publication or dissemination of audio recordings  and

---

[14]  For example, if Plaintiff finds that his notice of deposition of Mark Vanaman has been repeatedly rejected at Vanaman's address of record, Plaintiff may wish, if so advised, to engage a process server to hand-deliver said notice and thereby remove any controversy as to receipt of said notice.  Moreover, all parties are advised of their continuing duty to apprise the Court of their current addresses of record and to update said addresses should those addresses change.  *See* D. Conn. L. Civ. R. 5(b) (all counsel of record  must provide an "address, zip code, federal bar number [if applicable], fax number and e-mail address, if available");  D. Conn. L. Civ. R. 83.1 (c)(2) ("Any party appearing pro se must give an address within the District of Connecticut where service can be made upon him or her in the same manner as service is made on an attorney.");  D. Conn. L. Civ. R. 83.1 (c)(3) (3) ("A member of the bar of this Court who changes his or her office address shall notify the Clerk of such change of address within 30 days of such change . . . .").  The Court shall look with disfavor upon wilful evasion of notice or violation of the Court's Local Rules with respect to addresses of record.

thereby move discovery forward.  *See, e.g., Stern*, 529 F.Supp. 2d at 422 (banning release of videotapes to media during discovery where "there [was] a danger that judicial efficiency would be impaired" by release).   *See also Amodeo II*, 71 F.3d at 1050 (countervailing factors favoring protection of material from public access include "the danger of impairing law enforcement or judicial efficiency").

Prior to admission into the record, or use by the Court in performance of its judicial function, such audio recordings are not "judicial documents" entitled to a presumption of public access and are "merely materials generated in discovery."  *Stern*, 529 F.Supp. 2d  at 421.   Accordingly, restraints on their dissemination "are not a restriction on a traditionally public source of information."  *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 (1984).  *See also United States. v. Caparros*,  800 F.2d 23, 25 (2d Cir. 1986) ("[A]  litigant does not have 'an unrestrained right to disseminate information that has been obtained through pretrial discovery'" and "has no First Amendment right of access to information made available only for purposes of trying his suit." ) (quoting *Rhinehart*, 467 U.S. at 31, 33).

In affording  parties additional means to record deposition testimony, Congress chose to assist parties in preparing their cases.[15]  Accordingly, Plaintiff and any other party who wishes to make audio recordings of deposition testimony shall preserve the confidentiality of recordings while using them to prepare for trial.   Should any party abuse the right to record, the Court may see fit to prohibit all audio recordings of depositions in the future.

---

[15]   "Discovery rightfully involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (D.Conn. 1982), *cert. denied*, 460 U.S. 1051 (1983).

### 3.   **Publication of Deposition Testimony**

At the outset, it is important to note that the deposition transcripts at issue have not been filed as part of the public record in this case.[16]  The transcripts are thus not  "judicial documents," to which the public has a qualified First Amendment right of  access.  *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process.  Once the court has determined that the documents are judicial documents . . . a common law presumption of access attaches . . . .") (internal quotations and citation omitted);  *Securities & Exch. Comm'n v. TheStreet.com*, 273 F.3d 222, 233 (2d Cir.2001)(holding that deposition discovery materials are not "judicial documents" because they play no role in the performance of Article III functions; therefore, there is no presumption of public access to them); *United  States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995) ("*Amodeo II*") (transcripts of deposition testimony – that is, documents "passed between the parties in discovery" – are not judicial documents).

When the materials in question "are  deemed non-judicial, then there is no presumption of public access, and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order." *Ello v. Singh*,  531 F.Supp.2d 552, 583 (S.D.N.Y. 2007) (citing *Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers*, 621 F. Supp. 2d 55, 62 (S.D.N.Y. 2007) and *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir.2006)). As the Second Circuit explained in *Amodeo II*, "[d]ocuments that play no role in the performance

---

[16]   The  Local  Rules  of  this  District prohibit the filing of discovery materials, including deposition transcripts, "with the Clerk's Office except by order of the Court."   D. Conn. L. Civ. R. 5(f) (citing Fed. R. Civ. P. 5(d) (1) (mandating that depositions "must not be filed until they are used in the proceeding or the court orders filing")).

of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the . . . reach" of the presumption of public access." 71 F.3d at 1050 (internal quotations and citation omitted). Such documents "stand[ ] on a different footing than . . . a motion filed by a party seeking action by the court, . . . or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *Id.* (internal quotations and citation omitted).

In the case of non-judicial documents, the Court may therefore issue a protective order under Fed. R. Civ. P. 26(c) upon a baseline  showing of "good cause" that the order is necessary to  "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[17]  "The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

 The party seeking Rule 26(c) protection bears the burden of establishing the requisite "good cause." *See, e.g.*," *Flaherty v. Seroussi*, 209 F.R.D. 295, 297-98 (N.D.N.Y. 2001).  *See also Brown v. Astoria Federal Sav. & Loan Ass'n*, 444 F. App'x 504, 505 (2d Cir. 2011); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir.2004).  The "good cause" standard requires that the movant identify specific prejudice or oppression that will be caused by disclosure. If, however, the movant fails to present concrete reasons justifying a protective order,  the discovery materials in question will not receive judicial protection and may remain open to public inspection.  *See, e.g., Flaherty*,

---

[17]   Absent  a protective order, "the discovery rules place no [specific] limitations on what a party may do with materials obtained during discovery."  23 Am. Jur. 2d Depositions and Discovery § 167 (Westlaw update August 2012).  Certain courts have thus posited that, "[a]t a minimum, the governing rules strongly suggest a philosophy which favors free access to discovery materials in the absence of countervailing considerations." *Flaherty v. Seroussi*, 209 F.R.D. 295, 298 (N.D.N.Y. 2001).

209 F.R.D. at 299; *Gambale*, 377 F.3d at 142.  *Accord Felling v. Knight*, No. IP 01–0571–C–T/K, 2001 WL 1782360, at \*2-3 (S.D. Ind. Dec. 21, 2001) (finding no "good cause" under Rule 26(c) to protect from public dissemination topics of religion, basketball coaching techniques, and potentially embarrassing outbursts of anger where such topics were neither so "unduly embarrassing" nor "so sensitive or confidential as to warrant sealing the depositions").

### 4.    Defendants' Requested Protection

In the case in suit, Defendants, as movants, have the burden of demonstrating good cause for the issuance of the protective order.   Defendants broadly assert that "[g]ood cause exists for the Court to issue a protective order in this matter, prohibiting the [P]laintiff from publishing written deposition transcripts and/or tape recording[s]" of depositions.  Doc. #32-1, p. 4. Without reference to particular testimony, Defendants point solely to the dissemination of deponents' "personally identifying information."   They argue that Plaintiff "is a guns rights activist" and "has posted witness statements and other documents related to the case on his blogs and/or  websites, disclosing the personally identifying information of non-party witnesses, such as Sarah Dobensky, as well as [that] of co-defendant Mark Vanaman." *Id.*  Defendants state that both Dobensky and Vanaman have objected to the disclosure of such information as their "addresses, phone numbers, dates of birth, etc." on said blogs and websites.[18]  *Id.*  Defendants conclude that publication of testimony has been done "for the purpose of annoying and harassing said individuals."   *Id.*, *see also* Doc. #32, p. 2.

Defendants further request the Court's protection with respect to the means by which Plaintiff

---

[18]   As a result, according to Defendants, Dobensky has requested Plaintiff to remove such "personally identifying information from certain websites and the Plaintiff has refused." Doc. #32-1, p. 4-5.

may create audio recordings at depositions.  Defendants contend  that "any electronic recording of

a deposition must be taken by an independent, objective operator" – *i.e.*, not Plaintiff's counsel's

law clerk, Joseph Gasser, who "is not a member of the bar," so that the Defendants "question the

reliability of any audio recording made by him."  Doc. #32-1, p. 5.[19]

Lastly, Defendants ask the Court to bar Plaintiff from making audio recordings by openly

questioning his  need to do so where "[t]he official court reporter retained to record the depositions

. . . has indicated that, in addition to transcribing the proceedings, she takes an audio recording." *Id.*,

p. 6.  Should Plaintiff be allowed to record, "[a]t a minimum," Defendants seek "a copy of any

independent audio recording taken by the [P]laintiff" so that Defendants' "counsel can listen to it

and confirm the reliability and accuracy of same."  *Id.*

### 5.      Court's Findings

In analyzing the facts presented by Defendants in support of their various requests for Rule

26(c) protection, the Court finds that Defendants have  demonstrated  baseline  "good cause" with

respect to the primary focus of their concern:  personally identifying information in deposition

transcripts on Plaintiff's website and/or blogs.  Dissemination of such information to the public at

_____

[19] Defendants cite *Kallen v. Nexus Corp.*, 54 F.R.D. 610, 613  (N.D. Ill. 1972) in support of their demand for an independent operator of any audio recording equipment.  In that case, the Court suggested to the  parties that use of an independent court reporter to record testimony by non-stenographic means affords "protection of the record produced," particularly "in hotly contested litigation" where "the technical and mechanical responsibilities of operating recording equipment" may be complex.  In the present action, a court reporter has been present at depositions recording the testimony stenographically and, according to Defendants, with audio recordings as well. Doc. #32-1, p. 6.  Plaintiff's desire to make audio recordings thus relates to  a *secondary* or *additional*, rather than a primary or sole,  means of recording.  Moreover, there has been no indication that Plaintiff's digital audio recorder  is a problematically complex device, such that he, his attorney or her law clerk would be unable to operate it without incident or error.

large constitutes an invasion of the   privacy of both witnesses and parties named in those transcripts.[20]

"[T]here exists in the United States Constitution a right to privacy protecting 'the individual interest in avoiding disclosure of personal matters.'"[21]  *See, e.g.,  Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  *See also  Statharos v. New York City Taxi and Limousine Com'n*,  198 F.3d 317, 322  (2d Cir. 1999) ("Although the right to privacy is one of the less easily delineated constitutional guarantees," it encompasses "the individual interest in avoiding disclosure of personal matters.").  The  Second Circuit has stated that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *Associated Press v. U.S. Dept. of Defense*,  554 F.3d 274, 284 (2d Cir. 2009) (quoting *U.S. Dept. of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (2d Cir. 2009)).  It thus follows that "[t]here is a recognized 'privacy interest in keeping personal facts away from the public eye.'" *Assoc. Press*, 554 F.3d at 284-85 (quoting *U.S. Dept. of Justice,* 489 U.S. at 769).

 "Personal information," in the constitutional sense, is "information about an individual that, if widely known, would reasonably cause that individual embarrassment, discomfort, or concern." *Sec. Ind.  and  Fin. Markets  Ass'n  v.  Garfield*,  469 F.Supp.2d 25, 36 (D. Conn. 2007)  (finding

---

[20]  Privacy  interests  of  third parties are traditionally of particular concern to courts.  *See, e.g., United States v. Biaggi* ( *In re New York Times Co.*), 828 F.2d 110, 116 (2d Cir.1987) ("the privacy interests of innocent third  parties . . . should weigh heavily in a court's balancing equation in determining what portions of [parties' submissions] should remain sealed or should be redacted.").

[21]  *See Sec. Ind. and  Fin. Markets Ass'n v. Garfield*,  469 F.Supp.2d 25, 36 (D. Conn. 2007) ("The Fourteenth Amendment extends to individuals a fundamental right to privacy.") (citing *Whalen v. Roe*, 429 U.S. at  600).

parents possessed fundamental privacy interest in children's names, familial associations and connection to the parents' business on the Internet).  It is thus well established  that "identifying information such as names, addresses, and other personal information" may  fall "within the ambit of privacy concerns."  *Associated Press*, 554 F.3d at 285 (delineating privacy concerns under the Freedom of Information Act,  5 U.S.C.A. § 552).  In the context of Rule 26(c) protection, the Second Circuit has explicitly recognized "privacy interests" as a factor to be considered when balancing the parties' interests with respect to disclosure of materials.  *Amodeo II*, 71 F.3d at 1050-51.

Here, the personal information disclosed includes such identifying information as addresses, phone numbers, and birth dates – material which, when  placed on the Internet, might provide means for unwanted access to those individuals named. As Judge Underhill of this District observed, "[t]he Internet has revolutionized the scope and manner in which information is available for public access . . . and has also, unfortunately, provided criminals with a new medium through which to commit crimes."  *Sec. Indus. and Fin. Markets Ass'n v. Garfield* , 469 F.Supp.2d 25, 36 (D.Conn. 2007).  By gathering such individual pieces of information as a "home address, e-mail address, phone number, and the like," a criminal may obtain enough personal information to exploit an  individual. *Id.*  In the case in suit, where the transcripts at issue have not become judicial documents, there is minimal countervailing public interest in the disclosure of such personally identifying information. The Court shall thus order redaction of all such information from the published transcripts.

However, as to requested removal of the deposition transcripts in their entirety from Plaintiff's site of publication –  on the website of a "gun rights activist," Doc. #32-1, p. 4 –  the Court finds that Defendants have failed to make  a "baseline showing of good cause" for such blanket removal.  *Standard Inv. Chartered, Inc.,* 621 F. Supp. 2d at  62.  Rather, Defendants make

broad allegations of harm, unsubstantiated by specific examples or injury or articulated reasoning. They  recite Rule 26(c) itself to argue that Plaintiff's publication of transcripts is "for the purpose of annoying and harassing" the Defendants and non-party witnesses.  Doc. #32-1, p. 5.   The Rule condemns such a purpose as annoyance and harassment in general terms, but whether particular conduct is intended to accomplish that purpose is fact intensive.

Here, as Defendants point out, Plaintiff has chosen to publish "on his websites and/or blogs." *Id.*   In so doing, he seeks to publicize his favored cause – that is, a citizen's right to bear arms under the Connecticut and United States Constitutions.[22]  By sharing his lawsuit and other handgun-related lawsuits  with the public, Plaintiff likely seeks to garner public interest in the ensuing legal battles of those who elect  to carry firearms in public. *See* Doc. #1, ¶12.  Although his intent in publishing may be personally objectionable to Defendants and is, to say the least,  unrelated to the resolution of  his lawsuit, there is no evidence that his activities have risen to the level of personal harassment or constituted means of obtaining financial gain.

Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of "substantial embarrassment" or harm.  *See, e.g., Flaherty v. Seroussi*, 209 F.R.D. 295, 299 (N.D.N.Y. 2001)(even where plaintiff admitted his intention to use the local media to personally embarrass the defendant mayor in front of his constituents, *i.e.*, to figuratively knock his "teeth down his throat" during deposition questioning,

---

[22]   The primary authority  for one's right to bear arms  appears in the Second Amendment to the United States Constitution, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment right to bear arms applies to the States by virtue of the Fourteenth Amendment, U.S. Const. amend. XIV.  *See McDonald v. City of Chicago, Ill*., __U.S.__, 130 S.Ct. 3020,  177 L.Ed.2d 894 (2010).

"[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [mayor's] deposition testimony [was] not in and of itself sufficient to establish good cause to support the issuance of protective order."). *See also  Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 561-62 (D. Utah 2011) (entertainment attorney failed to establish "good cause" for issuance of protective order to restrict dissemination of transcripts and tapes of his deposition testimony because even if public dissemination might "cause him some level of discomfort," there was no "legitimate concern that any deposition in this case [would] be used for commercial or other private [financial] pursuits").[23]

Moreover, Rule 26(c ) protection is not warranted here in the absence of a particular articulated burden,  such as, for example,  misuse of information for financial or commercial gain, *Paisley Park Enter., Inc. v. Uptown Prods.,* 54 F.Supp.2d 347, 348 (S.D.N.Y.1999);  violation of the deponent's constitutional rights, *Hobley v. Burge*, 225 F.R.D., 221, 226 (N.D. Ill. 2004); or disclosure of trade secrets that would "work a clearly defined and very serious injury," *United States v. International Bus. Mach. Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975).

 Furthermore, no facts or circumstances have been presented to establish that Plaintiff has engaged in overtly vexatious or abusive behavior toward the deponents.  For example, Defendants have not argued that the transcripts have been edited or misrepresented, *i.e.*, exhibited in a false light,

---

[23]  *Cf.  Paisley Park Enterprises, Inc. v. Uptown Productions,* 54 F. Supp. 2d 347,  348 (S.D.N.Y.1999)( district court issued protective order which prohibited dissemination of videotaped deposition of performer known as "Prince," where intended dissemination was for a commercial purpose); *Drake v. Benedek Broadcasting Corp.*, No. CIV.A. 99-2227GTV, 2000 WL 156825, at *2 (D. Kan. Feb. 9. 2000) (where court found likelihood of plaintiff's intended use of videotaped witness deposition was for commercial or personal financial gain, witness was "afforded some protection under Fed.R.Civ.P. 26(c) against the potential improper use of his deposition").

or published in the context of explicit ridicule or censure.    In the absence of concrete evidence of "annoyance, embarrassment, oppression, or undue burden or expense," the Court cannot find "good cause" for  complete prohibition of dissemination of all deposition testimony in this action.

Lastly, court protection of future deposition transcripts has been held to be "premature," in that materials subject to protection must be dealt with as circumstances of particular depositions arise. *See, e.g.,  Patterson v. Burge*, No. 03 C 4433,  2007 WL 2128363, at *4  (N.D. Ill. July 24, 2007)(request for a broad protective order as to "all future depositions" held to be "too broad" and "premature" where future protection would be "dealt with based on the circumstances relating to that deposition").

In sum,  weighing the considerations at play with respect to the one form of abuse presented by Defendants – revelation of personally identifiable information,  I find that the privacy interests of the deponents and Defendants prevail.  Consequently, I find baseline "good cause" under Rule 26(c)  for the redaction – that is,  removal from public view –  of all such personally identifying information, such  as deponents' and parties' home addresses and phone numbers.  Also, in accordance with the spirit  of Local Rule of Civil Procedure 8(a)-(d), mandating  redaction of delineated personal information, Plaintiff shall redact from said testimony, if any,  Social Security numbers, financial account numbers, dates of birth, and names of minor children to the initials.  D. Conn. L. Civ. R. 8(a)-(d).[24]

Finally, examining Defendants' request for an order mandating an "independent, objective

---

[24]  According to Defendants, Plaintiff has already redacted his own personally identifiable information "(his date of birth, employer, and address)" from the published transcript of his deposition testimony.  Doc. #32-1, p. 5 n. 2.  Such behavior evidences an awareness of the privacy interest one possesses in such information.

operator" to make audio recordings at upcoming depositions and an opportunity for Defendants'
counsel to listen to any audio recordings made for accuracy, the Court finds such requests lack
merit.  The plain language of Rule 30(b)(3) reveals that the rule was designed for the convenience
of *any* party who wishes to make a non-stenographic recording of deposition testimony, provided
that the party give proper notice in advance.  Such an audio recording is for the party's personal use
in preparing for trial.  Nowhere in the rule is there a provision specifying particular credentials of
the operator, a mandatory quality of recording equipment, or an opportunity, as a matter of course,
for all counsel to review each recording made.

Rather, the accuracy of deposition recordings is ensured by the Federal Rules of Civil
Procedure.  In particular, under Rule 30(f), the officer taking the deposition "must retain the
stenographic notes of a deposition taken stenographically *or a copy of the recording of a deposition
taken by another method*" and '[w]hen paid reasonable charges, . . . furnish a copy of the transcript
or recording to any party or the deponent."  Fed. R. Civ. P. 30(f)(3) (emphasis added).[25]  Moreover,
pursuant to Rule 26(a)(3)(B), the examining party at trial is obliged to provide all parties with a
typed transcript of those portions of *any non-stenographic* recorded deposition on which he or she
intends to rely at trial.[26]  Fed. R. Civ. P. 26(a)(3)(B) (emphasis added)*; see also id.* 32(c) ("Unless
the court orders otherwise, a party must provide a transcript of any deposition testimony the party

---

[25] Accuracy is initially ensured by Rule 30(e), which grants the deponent "30 days after
being notified that the transcript or recording is available" to "review the transcript or recording;"
and "if there are changes in form or substance, to sign a statement listing the changes and the reasons
for making them."  Fed. R. Civ. P. 30(e)(1)(A)-(B).

[26] Rule 26(a)(3)(B) "requires that copies of the transcript of a non-stenographic deposition
be provided to other parties in advance of trial for verification, an obvious concern since counsel
often utilize their own personnel to prepare transcripts from audio or video tapes."  Fed.R.Civ.P.
26(a)(3), advisory committee's notes (1993 Amendment).

offers, but may provide the court with the testimony in nontranscript form as well."). *See also*

*Hudson v. Spellman High Voltage*, 178 F.R.D. 29, 31-32 (E.D.N.Y. 1998) ("In the event that plaintiff

intends to introduce any portions of the tape-recorded depositions at trial, he is directed to provide

[defendant] and the court with a written transcript of the relevant portions, in compliance with Rules

26(a)(3) and 32(c) of the Federal Rules of Civil Procedure.").

Plaintiff's proposed audio recordings will  be an "additional method" of recording

depositions; and official stenographic transcripts must, in any event,  be presented for admission at

trial.  Furthermore, if, as Defendants have suggested, the court reporter simultaneously audio-records

the deposition testimony while  transcribing it stenographically, any tampering with audio tapes by

Plaintiff will be revealed and negated by comparison to the reporter's contemporaneous audio and

stenographic recordings. Doc. #32-1, p. 6.

## IV.    <u>CONCLUSION</u>

Defendants' Motion to Compel (Doc. #31) is **DENIED**.  Sanctions are properly imposed

when there is a clear-cut bad faith, willful violation of a court order.  In light of the fact that the

Court's Mar. 16, 2012 ruling explicitly  barred publication of the partial *audio recording* Plaintiff

made of his own testimony on that date – and did *not*  address publication of deposition *transcripts*

– the Court shall impose no sanctions at this time nor order removal from the Internet of Plaintiff's

deposition transcript in its entirety.

However, in light of the infringed personal  privacy interests of the parties and witnesses

herein, the Court finds "good cause" under Federal Rule of Civil Procedure 26(c) to **GRANT**

Defendants' Motion for Protective Order (Doc. #32) as follows.  In order to protect deponents and

parties in this action "from annoyance, embarrassment, oppression, or undue burden or expense" relating to disclosure of their personally identifying information, the Court hereby ORDERS: Plaintiff shall immediately redact and remove from public view all personally identifying information appearing in *all* deposition transcripts he has published online:   all home addresses, phone numbers, Social Security numbers, financial account numbers, dates of birth, and any names of minor children to the initials.

Plaintiff and all parties are reminded that, subject to the provisions of Federal Rule of Civil Procedure 30(b), any party in this action must provide the prescribed notice to the deponent and all parties prior to attempting to make any future audio recording of deposition testimony.   In this regard, evasion of notice by deponents and/or parties' failure to provide accurate addresses for service shall be subject to sanction.

In addition, pursuant to the Court's authority to specify protective terms regarding disclosure of discovery under Federal Rule 26(c) of Civil Procedure, any audio recordings made at depositions shall be used *solely* by the parties to prepare for trial.   Specifically, to restore judicial efficiency – both  in  light of the acrimonious climate prevailing at depositions and the noted susceptibility of audio recordings to splicing –  no party in this action shall publish or disseminate audio recordings in any manner without prior permission of the Court.  Unless or until their contents are  admitted into evidence, audio recordings shall be held as confidential matter with access only by (1) parties and/or their attorneys of record; and (2) the staff of the aforementioned attorneys under the attorneys' direct supervision and responsibility.   Anyone who publishes or disseminates audio recordings without permission of the Court shall be subject to sanctions.

Similarly, if any party engages in abusive or inappropriate dissemination of deposition

transcripts, whether online or in the media, the injured party may, if so advised, seek protection from the Court under Rule 26(c).  To succeed, such a motion shall contain adequate factual support, *i.e.*, specific examples of harm, to establish  "good cause" under the rule.

All parties are advised that constant discovery skirmishes expend valuable time and resources of all parties and this Court.  Henceforth,  Plaintiff and Defendants are directed to cooperate to complete discovery expeditiously, avoiding further delay or  cancellation of scheduled depositions.

It is SO ORDERED.

Dated: New Haven, Connecticut
            September 21, 2012

                                      */s/Charles S. Haight, Jr.*
                                      Charles S. Haight, Jr.
                                      Senior United States District Judge