UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------- X
Richard E. Burgess,

                        Plaintiff,        **MEMORANDUM RULING**

        -against-                  Case No. 11-cv-1129

Wallingford, et al.,                         May 15, 2013

                          Defendants,
-------------------------------------------------------------- X

       Before the Court are cross motions for summary judgment filed by plaintiff Richard E.

Burgess [Rec. Doc. 50] and defendants Chief Douglas L. Dortenzio, Lieutenant Anthony

Martino, Sergeant Michael Colavolpe, police officers Devin Flood and Gabriel Garcia, and the

Town of Wallingford [Rec. Doc. 51].  Also before the Court are plaintiff's objection to

defendants' motion for summary judgment [Rec. Doc. 53], defendants' objection to plaintiff's

motion for summary judgment [Rec. Doc. 54], plaintiff's reply to defendants' objection [Rec.

Doc. 59], plaintiff's objection to granting summary judgment to *pro se* defendant Mark Vanaman

[Rec. Doc. 68], and defendants' response to plaintiff's objection to granting summary judgment

to Vanaman [Rec. Doc. 69]. Vanaman did not file an objection to plaintiff's motion for summary

judgment. For the reasons that follow, plaintiff's motion will be DENIED and defendants

Colavolpe, Dortenzio, Flood, Garcia, Martino, and the Town of Wallingford's motion will be

GRANTED. Additionally, the Court will GRANT summary judgment in favor of *pro se*

defendant Vanaman *sua sponte*.

       Plaintiff's Complaint [Rec. Doc. 1] alleges that he was unlawfully stopped and falsely

arrested by defendants Sergeant Colavolpe and Officers Flood and Garcia in violation of the

Fourth Amendment and 42 U.S.C. § 1983. Plaintiff also asserts a section 1983 claim for

deprivation of free speech in violation of the First Amendment and for deprivation of the right to

bear arms in violation of the Second Amendment against defendants Chief Douglas L.

Dortenzio, Lieutenant Anthony Martino, Sergeant Michael Colavolpe, police officers Devin

Flood and Gabriel Garcia and the Town of Wallingford. Additionally, plaintiff brings a claim

against the defendants Chief Douglas L. Dortenzio, Lieutenant Anthony Martino, Sergeant

Michael Colavolpe, police officers Devin Flood and Gabriel Garcia, and the Town of

Wallingford for deprivation of the right to bear arms in violation of the Connecticut Constitution,

Article 1, Section 15. Plaintiff brings a claim against the Town of Wallingford under *Monell v.

Department of Social Services*, 436 U.S. 658 (1978), for failure to train. Finally, plaintiff brings a

section 1983 claim for malicious prosecution against *pro se* defendant Mark Vanaman.

**I. Background**

On May 16, 2010, plaintiff went to Yale Billiards, a pool hall that serves alcoholic

beverages in Wallingford, Connecticut, wearing a loaded handgun visible in a holster on his hip.

Burgess Dep., Pl. Ex. II at 29:13-18, 30:7-11, 34:11-25, 54:12-13. He also had two extra thirteen

round magazines on the small of his back. *Id.* at 35:12-15. He carried a total of forty bullets. *Id.*

at 35:15-18. He wore a Connecticut Citizens Defense League ("CCDL") shirt which quoted the

Connecticut State Constitution regarding the right to bear arms, *id.* at 33:22-34:10, and also had

copies of a CCDL brochure explaining the CCDL's position on the legality of carrying firearms,

*id.* at 39:12-14, 45:13-46:18. He was at the pool hall for approximately fifteen to twenty minutes,

*id.* at 38:17-24, when the owner of Yale Billiards, Richard Hilton, approached him, *id.* at 39:1-4.

Hilton commented on the gun and noted that he thought it was not legal to openly carry it. *Id.* at

39:1-21; Hilton Dep., Def. Ex. F at 13:13-24. Hilton asked plaintiff if he would conceal his gun,

and plaintiff refused. Burgess Dep., Pl. Ex. II at 41:21-3; Hilton Dep., Def. Ex. F at 13:13-17.

2

Hilton left to call the police. Hilton Dep., Def. Ex. F at 13:19-21, 18:15-21. Defendant Mark

Vanaman, a customer who was playing pool at another table, Vanaman Dep., Pl. Ex. E at 59:7-

22, approached plaintiff, Burgess Dep., Pl. Ex. II at 39:24-25, and asked him to conceal his gun,

*id.* at 48:5-9; Vanaman Dep., Pl. Ex. E at 67:18-19. Plaintiff alleges that Vanaman was

"agitated." *Id.* at 53:17-20.  Plaintiff again did not conceal his weapon. Vanaman walked away

from plaintiff and went outside to call the police. Vanaman Dep., Pl. Ex. E at 9-20. After

Vanaman left, Hilton and plaintiff had another conversation wherein it was decided that plaintiff

would leave Yale Billiards. 50:6-13; Hilton Dep., Def. Ex. F at 15:9-10.

   The Wallingford Police Department's dispatch reported to the officers that a man openly

carrying a firearm was pacing outside of Yale Billiards. Flood Dep., Pl. Ex. D at 12:13-18;

Colavolpe Dep., Pl. Ex. HH at 27:22-28:2. Dispatch reported further that two calls had been

made reporting the man with an exposed gun at or in the vicinity of Yale Billiards. Colavolpe

Dep., Pl. Ex. HH at 28:15-16.

   Sergeant Colavolpe and officers Michael Fraenza, Gabriel Garcia, Abel Gonzalez, and

Devin Flood arrived. Colavolpe Dep., Pl. Ex. HH at 33:25-34:8. Officers Garcia and Flood spoke

with Vanaman, who identified plaintiff as the man with the firearm about whom he had called

the police.  Vanaman Dep., Pl. Ex. E at 81:13-25; Flood Dep., Pl. Ex. D at 21:21-24:12. Flood,

Colavolpe, and Garcia saw plaintiff sitting on a bench outside of Yale Billiards with a firearm in

a holster and two magazines visible at his waist. Pl.'s Revised Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc.

60]; Colavolpe Dep., Pl. Ex. HH at 36:7-9, 37:13-15, 42:16-25, 44:19-22. They approached

plaintiff and Sergeant Colavolpe promptly seized plaintiff's gun and ammunition. Colavolpe

Dep. 43:22-23. Plaintiff was then handcuffed and arrested. Burgess Dep., Pl. Ex. II at 60:4-18.

While plaintiff was handcuffed, Colavolpe called the police station and spoke with Lieutenant

Martino. Martino Dep., Pl. Ex. C at 18:18-19. They discussed whether Connecticut state law permitted the unconcealed carry of a firearm and whether someone could be arrested for disturbing others by unconcealed carry of a firearm. *See id.* at 20:1-29:21. Before they left the Yale Billiards parking lot, Colavolpe talked to Hilton who told him that the man with the weapon was making people uncomfortable. Colavolpe Dep., Pl. Ex. HH at 48:17-49:1-8. Plaintiff was then transported to police headquarters. Burgess Dep., Pl. Ex. II at 62:4-18. He was charged with disorderly conduct, his gun and ammunition were returned to him, and he was released later that night. Burgess Dep., Pl. Ex. II at 72:3-8. Plaintiff later filed a complaint regarding his arrest with the Wallingford Police Department. Martino Dep., Pl. Ex. C at 44:24-46:1. Chief Dortenzio assigned Lieutenant Martino to investigate the complaint. *Id.* The disorderly conduct charge against plaintiff was subsequently dismissed. *Id.* at 81:6-19.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a determination is to be made after "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's

4

claim, and if the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial.  *Id.* at 322-23.

Once the burden shifts to the non-moving party, it must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Id.* at 324.  The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

## III. Discussion

### A.  Unreasonable Search and Seizure

#### 1.  *Terry* Stop and Frisk

Plaintiff alleges that the initial stop by defendants Sergeant Colavolpe[1] and officers Flood and Garcia was an unconstitutional seizure in violation of *Terry v. Ohio,* 392 U.S. 1 (1968). He asserts that carrying a loaded gun in public does not create reasonable suspicion to justify a *Terry*

---

[1] Plaintiff brought unreasonable search and seizure claims alleging an unreasonable stop and false arrest against Sergeant Colavolpe in both his individual and official capacities.  A claim brought against a municipal employee in his official capacity is considered to be a claim against the municipality.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, the claim against Colavolpe in his official capacity is co-existent with plaintiff's *Monell* claim for failure to train regarding the stop and arrest.

stop. The defendant officers assert that reasonable suspicion existed to justify the investigatory

stop and seizure of plaintiff's weapon.

Under *Terry*, "an officer who has a reasonable, articulable suspicion that criminal activity

is afoot may conduct a brief, investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000).

A valid *Terry* stop must be "justified at its inception." *Terry*, 392 U.S. at 20. For reasonable

suspicion to justify a stop, there must be a "particularized and objective basis" for suspicion of

legal wrongdoing under the "totality of the circumstances." *United States v. Arvizu*, 534 U.S.

266, 273 (2002). A showing of reasonable suspicion requires "considerably less" than a showing

of probable cause. *United States v. McCargo*, 464 F.3d 192, 197 (2d Cir. 2006). "The standard

for determining whether a particular stop was justified by reasonable suspicion is an objective

one, not dependent on the intentions or motivations of the particular detaining officers." *United

States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992) (citations omitted). During a *Terry* stop,

"[t]he investigating officer may also frisk an individual for weapons if the officer reasonably

believes that person to be armed and dangerous." *United States v. Colon*, 250 F.3d 130, 134 (2d

Cir. 2001) (citing *Adams v. Williams,* 407 U.S. 143, 146, (1972); *McCardle v. Haddad,* 131 F.3d

43, 49 (2d Cir. 1997)).

Here, the defendant officers were responding to two calls to the Wallingford Police

Department reporting a man with an exposed gun at Yale Billiards. Pl.'s Revised Rule 56(a)1

Stmt. ¶ 4, 8, 11 [Rec. Doc. 60]. Dispatch had informed the police officers that a man carrying a

weapon on his person was pacing outside of a pool hall. Flood Dep., Pl. Ex. D at 12:13-18;

Colavolpe Dep., Pl. Ex. HH at 27:22-28:2. When the officers arrived, Garcia and Flood spoke

with Vanaman, who identified plaintiff.  Vanaman Dep., Pl. Ex. E at 81:13-25; Flood Dep., Pl.

Ex. D at 21:21-24:12. Flood, Colavolpe, and Garcia saw plaintiff sitting on a bench outside of

Yale Billiards with a firearm in a holster and two magazines visible at his waist. Pl.'s Revised Rule 56(a)1 Stmt. ¶ 12 [Rec. Doc. 60]. Colavolpe Dep., Pl. Ex. HH at 36:7-9, 37:13-15, 42:16-25, 44:19-22. The officers' knowledge of the two calls, Vanaman's identification of himself as one of the callers and of plaintiff as the man with the weapon, and the officers' firsthand account of plaintiff's visible weapon amount to a particularized and objective basis for suspicion that criminal activity may have been occurring or had occurred. The reports of plaintiff's actions created reasonable suspicion that plaintiff was in violation of the disorderly conduct statute. Weapons cause unique concerns for the safety of the public and the police. Under these circumstances, the police officers had reasonable suspicion to make an investigatory stop and to seize plaintiff's weapon and ammunition for their own safety while they determined whether an arrest was appropriate.

The facts of this case are similar to the Second Circuit's unpublished Summary Order in *Goldberg v. Town of Glastonbury*, 453 F. App'x 40 (2d Cir. 2011). In *Goldberg*, defendant police officers responded to a 911 call reporting that an individual entered a restaurant with an exposed firearm. *Id.* at 41. From the 911 call, the defendant officers knew that the manager of the restaurant was alarmed enough by the person with the exposed firearm that she had cleared the immediate area and contacted the police. *Id.* When the officers arrived, they saw that the plaintiff had a visible firearm on his hip. *Id.* The officers then performed an investigatory stop of the plaintiff. The Court found that reasonable suspicion justified defendants' *Terry* stop. Though not binding on the Court, *see* Second Circuit Local Rule 32.1.1, *Goldberg*'s determination is persuasive. The facts in these two cases are strikingly similar. In both cases, police were dispatched to a public place in response to calls to law enforcement reporting a man carrying a visible handgun. While the employees of Yale Billiards did not clear the area where plaintiff was

standing as the manager did in *Goldberg*, the defendant officers knew that two different people had called the police regarding the plaintiff, and the Town of Wallingford police dispatch reported that a man with a weapon was "pacing" outside of the establishment.  As in *Goldberg*, reasonable suspicion justified the defendant officers' *Terry* stop of the plaintiff.

### 2.  False Arrest

#### a.        False Arrest

Probable cause is a defense to an action for false arrest. *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). The probable cause analysis asks "whether a reasonable officer could conclude that the circumstances here established the necessary probable cause for [the arrest]; in short, [the court] must consider whether a reasonable officer could have believed that the specific action taken by [the officer] was foreclosed by clearly established law." *Caldarola*, 298 F.3d at 161. Probable cause to arrest exists when the officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . ." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Weyant,* 101 F.3d at 852). In deciding whether probable cause existed for an arrest, a court must assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), as amended (Dec. 4, 2012) (citations omitted).

Plaintiff was arrested for disorderly conduct.  Connecticut General Statute Section 53a-182 states in relevant part that "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . .

by offensive or disorderly conduct, annoys or interferes with another person . . . ." Conn. Gen. Stat. § 53a-182 (West 2013).

Plaintiff argues that there was no probable cause for his arrest. He asserts that he was engaged in purely legal behavior because "Connecticut law clearly and unmistakably permits individuals to openly carry a handgun in public." Pl. Mem. Support Mot. Summ. J. at 1. However, in *Peruta v. Commissioner of Public Safety*, the Appellate Court of Connecticut noted that: "Depending on the specific circumstances, a person who openly carries a pistol conceivably may be subject to arrest for violating several statutes, *even if § 29–35 does not prohibit a permit holder from carrying a pistol openly.*" 20 A.3d 691, 702 (Conn. App. Ct. 2011) (emphasis added). This language acknowledges that it is unsettled under Connecticut state law whether section 29-35 prohibits open carry. The *Peruta* court listed several statutes under which a permit holder could conceivably be subject to arrest for openly carrying a weapon, including section 53(a)-182, the disorderly conduct statute. *Id.* at 702 n.16. Depending on the circumstances, a person engaging in otherwise legal behavior may violate the disorderly conduct statute if he recklessly creates a risk of alarm and, by offensive or disorderly conduct, annoys another person. Under the state statute and the case law interpreting it, regardless of the lawfulness of an open carry under Connecticut state law, a person may be subject to arrest for disorderly conduct if the unconcealed carry satisfies the elements of the statute for disorderly conduct.

Under the undisputed facts, probable cause existed to justify plaintiff's arrest. Plaintiff chose to enter Yale Billiards wearing an exposed firearm in a holster and two exposed magazines on his waist. He chose to refuse to conceal his weapon when the owner of the establishment and a customer expressed their concern and asked him to do so. The owner and the customer were sufficiently concerned that plaintiff was wearing an exposed weapon that they called the police.

Upon arriving at Yale Billiards, the defendant officers knew that two people had called the police reporting that there was a man with an exposed weapon who refused to conceal it despite being asked to do so. Firearms cause unique concerns for safety, and the defendant officers knew that some people inside of Yale Billiards were troubled by the plaintiff's presence with his exposed weapon and ammunition. When the officers arrived, they spoke to Vanaman who identified plaintiff as the person about whom he had called the police. The officers then saw plaintiff sitting outside with an exposed gun and two magazines at his waist. Under the facts confronted by the officers when they arrived at the scene and under Connecticut state law, a reasonable officer could conclude that the circumstances established the necessary probable cause to arrest plaintiff for disorderly conduct. Plaintiff's false arrest claim therefore fails as a matter of law.

### b.        Qualified Immunity

Even assuming, *arguendo*, that probable cause did not exist, the defendant officers are entitled to qualified immunity because there was, at a minimum, arguable probable cause. Police officers are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, we examine whether there was 'arguable probable cause.'" *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Walczyk,* 496 F.3d at 163). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Ackerson*, 702 F.3d at 21 (citation omitted).

Given the facts of this case and the arguably unsettled nature of Connecticut state law, at a minimum, reasonable officers could disagree regarding whether there was probable cause that plaintiff recklessly created a risk of inconvenience, annoyance or alarm and annoyed another person by offensive or disorderly conduct.

Again, the Court finds the Second Circuit's analysis of the false arrest claim in *Goldberg*, 453 F. App'x at 42, to be persuasive. In its Summary Order, the Second Circuit found that the officers were entitled to qualified immunity on the false arrest claim based on the manager of a restaurant calling 911 to report a man who entered the restaurant wearing an exposed firearm. The officers who arrived at the scene confirmed that plaintiff was wearing an exposed firearm and that the manager appeared nervous and had cleared the area because of her alarm. Noting the unsettled state of Connecticut law, the Circuit Court found that under those facts, reasonable officers could disagree regarding whether there was probable cause to arrest the plaintiff for breach of the peace.[2] Connecticut law was no more settled at the time of Burgess's arrest, and the facts of this case and *Goldberg* are substantially similar.

For the foregoing reasons, officers of reasonable competence could disagree on whether the probable cause test was met. Accordingly, the defendant officers are entitled to qualified immunity on plaintiff's false arrest claim.

**B.   *Monell* Claim Against the Town of Wallingford For Failure to Train Resulting in Violation of Plaintiff's Fourth Amendment Rights**

A municipality cannot be held liable under section 1983 for its employees' conduct under a theory of *respondeat superior*. *Reynolds v. Giuliani*, 506 F.3d 183, 190-91 (2d Cir. 2007). However, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality

---

[2] "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." Conn. Gen. Stat. § 53a-181 (West 2013).

can be held liable under section 1983 for its policy, custom, or practice that causes the deprivation of a constitutional right.  Plaintiff premises his *Monell* claim against the Town of Wallingford on its failure to train its officers on when to arrest someone openly carrying a weapon under the Fourth Amendment.

In general, without a constitutional violation by an individual actor, the Town cannot be held liable. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). There are narrow exceptions to this rule where "the injuries complained of are not solely attributable to the actions of named individual defendants," *Barrett v. Orange County Human Rights Comm'n,* 194 F.3d 341, 350 (2d Cir. 1999), or where an individual officer is found not liable because of qualified immunity but did in fact violate the plaintiff's rights, *see Curley v. Vill. of Suffern,* 268 F.3d 65, 71 (2d Cir. 2001). Neither of those exceptions apply here. As the Court has found no underlying Fourth Amendment constitutional violation for unreasonable search and seizure or false arrest against the Town of Wallingford's employees, there is no basis for municipal liability under *Monell*. As such, summary judgment will be granted in favor of the Town of Wallingford on plaintiff's *Monell* claim based on failure to train resulting in an unlawful search and seizure.

## C.  Second Amendment

Plaintiff alleges that his arrest violated the Second Amendment. He asserts that his arrest violated the Second Amendment because he did nothing more than lawfully openly carry a weapon and any resulting annoyance was created as a byproduct of constitutionally protected

12

behavior.[3]  The defendant officers assert that the Second Amendment does not protect the carry

of weapons outside of the home in a manner that causes public alarm and that they are entitled to

qualified immunity on this claim as the Second Amendment had not yet been incorporated at the

time of plaintiff's arrest. The Supreme Court had not ruled that the Second Amendment was

applicable to the states through the incorporation doctrine at the time of plaintiff's arrest.

The defendant officers are plainly entitled to qualified immunity on plaintiff's Second

Amendment claim.  To determine whether a government official sued in his individual capacity

is entitled to qualified immunity, a court "must first determine whether the plaintiff has alleged

the deprivation of an actual constitutional right at all, and if so, proceed to determine whether

that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S.

603, 609 (1999).  If the right was not clearly established at the time of the alleged violation, the

officials are entitled to qualified immunity. *See Safford Unified Sch. Dist. v. Redding,* 557 U.S.

364 (2009). In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court held that courts

may exercise discretion in determining which of the two prongs should be addressed first.

It was not clear at the time of plaintiff's May 16, 2010 arrest whether or how the

Connecticut statutory regime was or would be subject to the Second Amendment. At that time,

the Supreme Court had decided *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held

that "the Second Amendment conferred an individual right to keep and bear arms." *Id.* at 595.

---

[3] Plaintiff brought his Second Amendment claim against the Town of Wallingford, Chief Dortenzio in his individual and official capacities, Lieutenant Anthony Martino in his individual and official capacities, Sergeant Michael Colavolpe in his individual and official capacities, and Officers Flood and Colavolpe in their individual capacities. The claims brought against municipal employees in their official capacities are considered claims against the municipality. *See Hafe*, 502 U.S. at 25. Plaintiff has not identified any policy, custom, or practice that caused a deprivation of a Second Amendment right upon which municipal liability could be premised under *Monell*, 436 U.S. 658. Plaintiff alleges only that the Town is liable under *Monell* because "police officers were not adequately trained concerning individuals rights to be free from unlawful arrest and unreasonable search and seizure for merely carrying a handgun in plain view." Pl. Mem. Support Mot. Summ. J., 21 [Rec. Doc. 50].  Therefore, plaintiff's Second Amendment claim will be dismissed against all defendant officers in their official capacity, as well as against the Town of Wallingford.

However, *McDonald v. City of Chicago*, 130 S. Ct. 3020, —U.S. —— (2010), which applied the Second Amendment to the states, had not yet been decided.  *McDonald* was decided on June 28, 2010. Additionally, it was, and remains, unclear how the Second Amendment applies to an unconcealed carry. In *Heller*, the Supreme Court noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions." 554 U.S. at 626. In 2012, the Second Circuit in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012), noted that *Heller* found that "Second Amendment guarantees are at their zenith within the home," but that "we do not know the scope of that right beyond the home . . . ." *Id.* at 89; *see also Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 659 (7th Cir. 2012), reh'g denied (Feb. 14, 2012) ("Whatever the Supreme Court's decisions in *Heller* and *McDonald* might mean for future questions about open-carry rights, for now this is unsettled territory."). Finally, it was unclear how the Second Amendment interacts with arrests, like the arrest in this case for disorderly conduct, that are related to gun possession but are explicitly not firearms charges.

The Court must therefore conclude that, at the time of plaintiff's arrest, it was not yet clear that the Second Amendment was applicable to the states or how it would apply to situations like the defendant officers' encounter with plaintiff. Accordingly, the defendant officers are entitled to qualified immunity on plaintiff's Second Amendment claim.

### D.  First Amendment

Plaintiff alleges that his arrest violated his First Amendment right to free speech.[4] He alleges that openly carrying a gun, in combination with wearing a shirt expressing support for the right

---

[4] As with his Second Amendment claim, *see supra* note 3, plaintiff brought his First Amendment claim against the Town of Wallingford, Chief Dortenzio in his individual and official capacities, Lieutenant Anthony Martino in his individual and official capacities, Sergeant Michael Colavolpe in his individual and official capacities, and Officers Flood and Colavolpe in their individual capacities. The claims brought against municipal employees in their official capacities are considered claims against the municipality. Plaintiff alleges only that the Town is liable under *Monell* because of its failure to train resulting in a violation of the right to be free from unlawful arrest and unreasonable search and seizure and does not allege a policy, custom, or practice resulting in a violation of the First Amendment.

to bear arms and having on his person gun rights brochures, constitutes protected expressive conduct.

"To recover on a first amendment claim under § 1983, a plaintiff must demonstrate that his conduct is deserving of first amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991).[5] While plaintiff was arrested for disorderly conduct for his actions that alarmed others, "a person whose conduct renders him guilty of [disorderly conduct] may nevertheless be entitled to protection [under the First Amendment] with respect to some aspects of his expressive activity." *Johnson v. Bax*, 63 F.3d 154, 159 (2d Cir. 1995). Accordingly, even though plaintiff's arrest for disorderly conduct was supported by probable cause, some aspects of his conduct may be subject to First Amendment protection.

First, the plaintiff must demonstrate that his conduct was protected by the First Amendment. The Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea . . . ." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *United States v. O'Brien,* 391 U.S. 367, 376 (1968)). To determine whether conduct invokes the First Amendment, a Court must ask "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Id.* at 404 (internal citations and quotations omitted). Gun possession may, in some contexts, meet that test and invoke First Amendment analysis. The Ninth Circuit noted that "a gun protestor burning a gun

---

Therefore, plaintiff's First Amendment claim will be dismissed against all defendant officers in their official capacities, as well as against the Town of Wallingford.
[5] Burgess has not alleged that his arrest establishes retaliation in violation of the First Amendment. *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *Morgan v. County of Nassau*, 720 F. Supp. 2d 229, 238 (E.D.N.Y. 2010).

may be engaged in expressive conduct[, as] might a gun supporter waving a gun at an anti-gun control rally." *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003).

If reasonable officers could disagree regarding whether plaintiff's conduct of wearing an unconcealed weapon with ammunition and wearing a shirt referencing the right to bear arms was symbolic speech protected under the First Amendment, the defendant officers are entitled to qualified immunity on plaintiff's First Amendment claim. Here, given the circumstances that led to the officers' encounter with Burgess on the evening in question and what they encountered on the scene, the Court finds that reasonable officers could disagree whether or not there was a great likelihood of plaintiff's visible weapon and his shirt conveying a message to those who viewed it. Carrying a weapon alone is generally not associated with expression. While plaintiff's shirt makes it more likely that those who viewed his overall conduct would understand his message than if he were only openly carrying his weapon, reasonable officers could disagree regarding whether his shirt established a great likelihood that others would interpret his weapon as a particularized message regarding the Second Amendment rather than, for example, a weapon carried for protection. The message on plaintiff's shirt is clearly speech, but there is not a soupçon of evidence in the record before the Court that plaintiff's stop or arrest was in any way related to the message on his shirt.[6] Finally, the law regarding the protection of gun possession as speech was not clearly established at the time of plaintiff's arrest. Therefore, summary judgment will be granted for the defendants as to plaintiff's First Amendment claim, as they are entitled to qualified immunity.

---

[6] Plaintiff also alleges that he offered literature to the defendant officers in order to prove that it was lawful to openly carry his weapon and the officers threw it on the ground. Burgess Dep., Pl. Ex. II at 61:2-10. He alleges that this occurred after he had already been stopped and placed under arrest.

### E. Malicious Prosecution Claim against Vanaman

Plaintiff brings a claim for malicious prosecution against *pro se*[7] defendant Mark

Vanaman. Vanaman did not file a cross-motion for summary judgment nor an objection to

plaintiff's motion for summary judgment.

### 1. Summary Judgment Standard

The Second Circuit has held that where the non-moving party "chooses the perilous path

of failing to submit a response to a summary judgment motion, the district court may not grant

the motion without first examining the moving party's submission to determine if it has met its

burden of demonstrating that no material issue of fact remains for trial." *Vt. Teddy Bear Co., Inc.*

*v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley,* 274 F.3d

677, 681 (2d Cir. 2001)). "Even unopposed motions for summary judgment must fail where the

undisputed facts fail to show that the moving party is entitled to judgment as a matter of law."

*D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks

omitted). Furthermore, "[d]istrict courts have the discretion to grant summary judgment *sua*

*sponte* . . . ." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (quoting *Schwan–*

*Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.,* 401 F.3d 28, 33 (2d Cir. 2005)). Rule

56(f) of the Federal Rules of Civil Procedure, as amended in 2010, provides: "After giving notice

and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant . .

. ." Fed. R. Civ. P. 56(f). On April 25, 2013, the Court gave notice to the parties that it intended

to grant summary judgment *sua sponte* in favor of Mark Vanaman and allowed plaintiff ten days

---

[7] There is no indication in the record that plaintiff complied with the local rule requiring service on *pro se* litigants. District of Connecticut Local Rule 56(b) provides that: "Any represented party moving for summary judgment against a party proceeding pro se shall file and serve, as a separate document, in the form set forth below, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment.'" District of Connecticut Local Rule 56(b), available at http://www.ctd.uscourts.gov/sites/default/files/local_rules/Revised%20Local%20Rules%20%2011-15-2012.pdf. Normally, plaintiff's motion would be denied without prejudice; however, it is clear that plaintiff's claim against Vanaman fails as a matter of law, and the Court will grant summary judgment for Vanaman for the reasons set forth below.

to file an objection. [Rec. Doc. 67]. On May 3, 2013, plaintiff filed his objection, which spent one paragraph explaining that without an explanation of the Court's reasoning for granting summary judgment in favor of Vanaman, plaintiff could not "sufficiently respond." [Rec. Doc. 68].[8] Nevertheless, Rule 56 was satisfied as plaintiff was on notice that he had to come forward with all of his evidence to either support granting summary judgment in his favor and against Vanaman or to demonstrate that genuine issues of material fact existed such that summary judgment should be denied.

### 2.  Section 1983 Malicious Prosecution

#### a.  Under Color of State Law

In order to state a claim under Section 1983, a plaintiff must allege a violation committed by either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Vanaman is plainly not a state actor. Of the tests to determine whether a private party was acting under color of state law, applicable here is the joint participation test, set out by the Supreme Court in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) and applied to a police complainant by the Second Circuit in *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir. 1999). The mere reporting of information to law enforcement is insufficient to support joint engagement. *Ginsburg*, 189 F.3d at 272 ("[A defendant's] provision of background information to a police officer does not by itself make [the defendant] a joint participant in state action under Section 1983."). "Where . . . a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a

---

[8] Plaintiff inappropriately employed the remaining four pages of his objection to argue why summary judgment should not be granted in favor of the represented defendants, a topic upon which the Court did not request or otherwise suggest that it would entertain argument.

state actor under Section 1983." *Id.* Without evidence of a "plan, prearrangement, conspiracy, custom, or policy," *id.*, a complainant is not acting under color of state law.

The record before the Court shows that Vanaman's interactions with the Wallingford Police Department were limited to providing background information. After noticing plaintiff's gun and asking him to conceal it, Vanaman called the Wallingford Police Department. Pl.'s Revised Rule 56(a)1 Stmt. ¶ 5, 8 [Rec. Doc. 60]; Vanaman Dep., Pl. Ex. E at 70:17-18 [Rec. Doc.]. When the defendant officers of the Wallingford Police Department arrived, Vanaman spoke with some of them and identified plaintiff. Vanaman Dep., Pl. Ex. E at 80:10-12, 81:13-25; Flood Dep., Pl. Ex. D at 21:21–22:9, 24:2-12; Colavolpe Dep., Pl. Ex. HH at 31:3-33:8. There are no facts in the record to suggest that Vanaman did more than report background information to law enforcement and then defer to the independent judgment of the officers regarding how to respond. The record before the Court shows that Vanaman described what he saw and experienced, and did not in any way make himself a joint participant in plaintiff's subsequent arrest. The record before the Court does not indicate in the slightest that the police officers at the scene were acting at Vanaman's direction or that Vanaman was otherwise influencing the officer's decisions. Indeed, Vanaman was not the only call to the police regarding plaintiff's activity at Yale Billiards on May 16, 2010. *See* Colavolpe Dep., Pl. Ex. HH at 28: 15-16. There is no evidence of a plan, prearrangement, conspiracy, custom, policy, or any other joint activity between Vanaman and the Wallingford Police Department and its officers.  Therefore, plaintiff's section 1983 claim against Vanaman fails as a matter of law.

**b.  Elements of the Malicious Prosecution Claim**

The analysis of plaintiff's claim against Vanaman could end upon the Court's determination that Vanaman was not a state actor. However, as the Court intends to grant

summary judgment *sua sponte* on plaintiff's claim against Vanaman, and plaintiff did not address state action in his motion for summary judgment nor in his objection filed pursuant to the Court's Order [Rec. Doc. 67], the Court will evaluate the substantive claim of malicious prosecution, which was fully briefed in plaintiff's motion [Rec. Doc. 50].  It is clear that in addition to the lack of state action, plaintiff's malicious prosecution claim fails as a matter of law because it fails to satisfy the elements of malicious prosecution.

In analyzing claims for malicious prosecution brought under section 1983, federal courts look to the law of the state where the arrest occurred, as the federal tort is substantially the same as a claim for malicious prosecution under state law. *Miles v. City of Hartford*, 445 F. App'x 379, 381 (2d Cir. 2011) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)). To prevail on a malicious prosecution claim under Connecticut state law, a plaintiff must prove the following elements: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Bhatia v. Debek*, 948 A.2d 1009, 1017 (Conn. 2008) (citing *McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982)).

A private person can initiate a criminal proceeding under Connecticut state law. "A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution." *McHale*, 446 A.2d at 817 (citations omitted).  A private person can also initiate a criminal proceeding if he "knowingly provides false information to a public officer . . . , even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer."

20

*Bhatia*, 948 A.2d at 1018-19. To have initiated a criminal proceeding, a private person must have done more than "to provide potentially incriminating information to a public officer." *McHale*, 446 A.2d at 817.  If "the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." *Id.*

There is no evidence in the record before the Court showing that Vanaman did not provide the police with what he reasonably believed to be truthful information, nor is there any evidence that he pressured the police officers to arrest plaintiff. Plaintiff emphasizes that Vanaman reported "lawful behavior" that he believed to be unlawful and therefore initiated the criminal proceeding. Even if the law were settled regarding the legality of open carry, which it was not at the time of plaintiff's arrest, reporting information of lawful behavior to a police officer alone does not satisfy the initiation element.  As long as the complainant makes a "full and truthful disclosure" and leaves "the decision to prosecute entirely in the hands of the public officer," the complainant is entitled to the immunity provided by this element. *McHale*, 446 A.2d at 817.  Vanaman reported to the police that plaintiff was visibly carrying a gun and refusing to conceal it.  Viewing the facts in the light most favorable to plaintiff, Vanaman also reported that plaintiff "was making people uncomfortable." Colavolpe Dep., Pl. Ex. HH at 32:22-25. Although plaintiff suggests that this constitutes false information because plaintiff did not make anyone at Yale Billiards uncomfortable, Pl. Mem. Support Mot. Summ. J., 26-27 [Rec. Doc. 50], plaintiff has provided no evidence to contradict that, at the very minimum, Robert Hilton, owner of Yale Billiards, who also called the Wallingford Police Department regarding plaintiff's activity, Pl.'s Revised Rule 56(a)1 Stmt. ¶ 4 [Rec. Doc. 60], was uncomfortable. Therefore, there is no evidence that Vanaman did more than report to the police what he reasonably believed to be

21

truthful information about what happened at Yale Billiards, and the Court must conclude as a matter of law that Vanaman did not "initiate the criminal proceeding."

"[T]he facts before the district court [are] fully developed so that the moving party [will suffer] no procedural prejudice" *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir. 1991), by having summary judgment granted *sua sponte* against it. In addition to the notice given to plaintiff allowing him to come forward with all evidence and argument supporting why summary judgment should not be granted in favor of Vanaman, plaintiff moved for summary judgment on the substance of the malicious prosecution claim against Vanaman. As plaintiff failed to establish the elements of malicious prosecution as a matter of law, summary judgment will be granted against plaintiff on his malicious prosecution claim against Vanaman.

### F.  Connecticut State Law Claims

As all of plaintiff's federal claims will be dismissed, the Court declines to exercise its supplemental jurisdiction to consider plaintiff's state law claim for deprivation of the right to bear arms under the Connecticut Constitution. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). As noted previously, the state of the lawfulness of openly carrying a firearm in Connecticut is far from settled. This Court will not entertain a suit where the only remaining claim is a complex question of state law that is more properly left for the state courts of Connecticut to resolve. Plaintiff's state law claim will therefore be dismissed without prejudice.